JAMES K. P. PINE, APPELLEE, v. DANIEL MANGUS ET AL., APPELLANTS.

FILED MARCH 8, 1906. No. 14,179.

Mortgage: ASSIGNMENT: PAYMENTS TO MORTGAGEE. A mortgagee of real estate assigned its mortgage, and guaranteed the payment thereof, and thereafter collected the principal and interest, but failed to account therefor to its assignee, who instituted this action to foreclose the mortgage. Evidence examined, and *held* sufficient to show that the mortgagee was the agent of its assignee, and the payments to it satisfied the mortgage indebtedness.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Reversed with directions.*

*Tibbets Bros. & Morey* and *W. S. Morlan,* for appellants.

*M. A. Hartigan* and *C. E. Eldred,* contra.

EPPERSON, C.

On the first day of March, 1888, a mortgage was given to the Guarantee Loan & Trust Company of Kansas City, Missouri, by one Mangus, conveying 160 acres of land in

Red Willow county to secure the payment of a loan of $750 due in five years. The principal indebtedness was evidenced by one bond or note, which was made payable at the office of the mortgagee in Kansas City. The record shows the following undisputed facts: That on the 25th day of September, 1888, the mortgage was assigned to the appellee Pine, by the execution of an ordinary written assignment, and the delivery of the bond, coupons and mortgage, and with the guaranty on the part of the mortgagee, hereinafter referred to as the loan company, that the interest would be paid promptly, and the principal within two years after due. By mesne conveyance from the mortgagor, Mangus, the mortgaged property was on March 17, 1893, deeded to the appellant Gustofson, who took the title subject to the mortgage. Soon thereafter he paid $250 of the principal and obtained, by negotiation with the loan company, whose assignment to the appellee. had not then been recorded, an agreement extending the time for the payment of $500 for two years from March 1, 1893. The extension agreement was submitted by the loan company to him, and contained the following: "The Eastern Banking Company, J. K. P. Pine, the legal owner and holder, has agreed to and does extend the time of the payment of $500 thereof for a term of two years from March 1, 1893, the consideration being the loan as first made." The coupons thereto attached were, however, made payable to J. K. P. Pine. This agreement and the coupons when signed and forwarded to the loan company which retained them until paid, when they were returned to Gustofson, with a written satisfaction of the mortgage signed and acknowledged by the loan company, and which was duly recorded November 7, 1896. None of these payments, either of principal or interest, unless it be the interest maturing September 1, 1893, were remitted by the loan company to the appellee, nor did he know of such payments being made. On the 3d day of July, 1897, the appellee caused his assignment to be recorded in the office of the register of deeds of Red Willow county; and on the

20th day of October, 1899, instituted this action in the district court for Red Willow county to foreclose the mortgage, alleging default in the payment of the principal sum falling due March 1, 1893. The appellants Gustofson and Fagerstrom, and other necessary parties, were made defendants. The district court found for the appellee, and decreed a foreclosure of the mortgage for the satisfaction of the claimed amount. From this decree the appellants Gustofson and Fagerstrom appeal.

On September 24, 1893, Gustofson conveyed the land by his warranty deed to Fagerstrom, who claims to be a purchaser in good faith, without notice, of the appellee's assignment. It is apparent that the appellant Fagerstrom had actual notice of all the facts known to his grantor, and knew of the assignment, and therefore he has no greater equities than Gustofson would have, had such transfer never been made. The sole question here presented is whether or not the loan company was the agent of its assignee, the appellee herein, clothed with actual or ostensible authority to collect the principal and interest. The appellee claims that the loan company had no authority to extend the time for the payment of $500 of the principal, nor to collect any part of the principal or interest at any time; and in his deposition states that no such authority existed. But we take into consideration the facts testified to by him, and other evidence showing the relationship which existed between him and the loan company, rather than his opinions or conclusions as to their relations. About the time of the assignment of the mortgage in controversy, the appellee also procured seven other mortgages from the loan company, and regarding his relations generally with the loan company he says, in substance, that he did in one or two cases accept part payment and extend the time for the payment of the remainder; that the loan company usually sent its check, and requested him to send coupons; that at least two other loans were collected by the loan company for him. He also attached as exhibits to his deposition letters re-

ceived by him from the loan company regarding the collection of several mortgages, from which it appears that the loan company was looking after collections on account of their guaranty of the payment. And in a letter dated January 6, 1893, the loan company said: "If it is your wish that the collection of these coupons be given to other parties, we will give the matter no further attention. I request that you indicate your wishes with reference to these matters at once." And April 24, 1903, wrote: "Some of your loans have matured, and will be glad to give you any assistance needed in the collection thereof." These were transactions of the same character, the proof of which goes to show that the appellee had authorized the loan company to collect such debts. "Such authority may be inferred from the fact that similar acts, through a series of transactions relating to a like business, have been uniformly ratified by the creditor." *Harrison Nat. Bank v. Austin,* 65 Neb. 632.

But the proof is not limited to facts showing general authority. In his deposition, appellee admits that he did agree to an extension of two years' time for the payment of $500 of the principal, upon the payment of $250. After agreeing to this he did nothing toward the collection of the paper, until the amount thereof had been paid and the loan company had failed in business. As a reason for his inexcusable neglect he says: "These people," referring to the loan company, "assured me that these papers were all completed, and that all that I would have to do was to put them in my safe and receive the principal and interest when due, and the company would guarantee the payment of it." Upon these facts it appears that the appellee relied upon the agency of the loan company for the collection of the principal and interest; and it makes no difference whether that agency was authorized by express contract, or implied from the relationship existing between them. In *Thomson v. Shelton,* 49 Neb. 644, it was held: "Ostensible authority to act as agent may be conferred if the party to be charged as principal affirmatively or

intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency."

In the case at bar, proof of the lack of ordinary care in looking after his property, either personally or through some other agent, and the other facts proved convince us that he depended upon the agency of the loan company to protect his interests, and that Gustofson was justified in relying upon such agency and making the payments as he did. The loan company having authority to collect the money, payment to it satisfied the lien, and the appellee's right to foreclose thereby ceased.

The appellants, in the court below, asked that the said mortgage be declared no lien upon said premises; that it be canceled of record, and the title to said land be quieted in the appellant Charles Fagerstrom, and that the appellee's action be dismissed. Appellants were entitled to this, and we recommend that the judgment of the district court be reversed, and that court be directed to dismiss the appellee's action, and enter his judgment therein canceling said mortgage of record, and affirming the title to said premises in the appellant, Charles Fagerstrom, in so far as the same is affected by the said mortgage and the assignment thereof.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons appearing in the foregoing opinion, it is ordered that the judgment of the district court be reversed, with instructions to the district court to enter his judgment dismissing the appellee's case, and canceling his said mortgage of record, and quieting the title to said premises in the appellant, Charles Fagerstrom, in so far as the same is affected by said mortgage and the assignment thereof.

JUDGMENT ACCORDINGLY.